[No. 15586-9-II. Division Two. June 21, 1995.]
*In re the Marriage of* KIM R. WRIGHT, *Respondent, and* LYNETTE D. WRIGHT, *Appellant.*

*James Michael Caraher, James Caraher & Associates,* for appellant.

*Brian L. Meikle, Meikle & Wood,* for respondent.

ALEXANDER, J.* — Lynette Wright appeals a decree of dissolution, claiming errors by the trial court in the determination of child support and the division of property.

---

*Judge Gerry L. Alexander was a member of the Court of Appeals, Division Two, at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

She also claims that the trial court erred in denying her request for spousal maintenance and in declining to award her attorney fees. We affirm.

Lynette Wright and Kim Wright were married in September 1976. Five children were born to the Wrights during the course of their marriage. The Wrights separated in December 1989 and thereafter Kim filed a petition for dissolution of the marriage.

At the conclusion of the dissolution trial, the trial court awarded Lynette 60 percent of the equity in the Wrights' family home and the use of it until it was sold. Lynette was also awarded an approximate 50 percent interest in two retirement funds. The trial court characterized these funds as community property and placed a present value on them of $63,467. The decree provided that Kim was to pay Lynette for her interest in the retirement funds in monthly installments of $487 per month. Lynette was not awarded any interest in an account in Kim's name with United Services Automobile Association (USAA), an account which the trial court found had a value of $10,000. Neither was she awarded any portion of Kim's retroactive pay.

Lynette was awarded the primary residential custody of the Wrights' children. Kim Wright was ordered to pay monthly support for the children in the amount of $1,839, based on a finding that his monthly income was $4,950 and that Lynette's income was $1,700 per month, of which $300 per month was imputed. Lynette's request for maintenance was denied, and she was awarded attorney fees of $2,500.

## I

### CHILD SUPPORT

Lynette Wright asserts that the trial court erred in imputing monthly income of $300 to her in addition to her actual income of $1,400. The trial court imputed that amount of income to Lynette, concluding that "it is reasonable that the Respondent [Lynette] could earn a net

monthly income of $1,700" and that she had "choices" of employment "available to her". In that regard, the record disclosed that Lynette was employed half-time as a nurse at a Veterans' Administration hospital and part-time with the National Guard. She earned $1,400 each month from the two part-time employers. There was also evidence that Lynette could obtain full-time employment as a nurse.

■ Lynette argues that because she is working half-time at a hospital, is the primary caretaker of five children ranging in age from 9 to 12, and is a member of the National Guard, she is doing all that she can be expected to do and no additional income should be imputed to her. Although this court is sympathetic to the significant difficulties faced by a single parent, we have held that voluntary under-employment by either parent will not shield that parent from a child support obligation. *In re Marriage of Jonas*, 57 Wn. App. 339, 788 P.2d 12 (1990). This principle applies with equal force to men and women, regardless of the merit of the reason for the under-employment. *Jonas*, 57 Wn. App. at 340. Because the record discloses that Lynette Wright could have obtained full-time employment as a nurse, we cannot say that the trial court erred in imputing additional income of $300 per month to her for purposes of calculating child support. This was an amount that was substantially less than the additional amount she could earn if she obtained full-time employment and, thus, the imputation cannot be said to be an abuse of discretion.

## II

### PROPERTY DIVISION

■ The division of marital property is governed by the provisions of RCW 26.09.080. In general, the trial court's division of marital property will not be reversed on appeal absent a showing of manifest abuse. *In re Marriage of Kraft*, 119 Wn.2d 438, 450, 832 P.2d 871 (1992). Review of this issue is limited to whether the trial court's distribution of property was fair and equitable. *In re Marriage of*

*Pearson-Maines,* 70 Wn. App. 860, 855 P.2d 1210 (1993).
Lynette Wright assails the trial court's division of the
marital property in several respects. We will discuss each.

## A
## Pension Plans

■■ Pension benefits constitute property rights in the
nature of deferred compensation, even if the benefits are
not presently payable. *In re Marriage of Bulicek,* 59 Wn.
App. 630, 800 P.2d 394 (1990). Several methods of allocat-
ing pension rights have been approved by the courts of
this state. One approved method is to award the entire
interest in the pension to one party and to award the other
party a sum certain which may or may not be payable
over a specified period of time. *DeRevere v. DeRevere,* 5
Wn. App. 741, 746, 491 P.2d 249 (1971). That is precisely
what the trial court did here. It awarded Kim the right to
receive the pension at the time it is paid out and it ordered
Kim to pay Lynette for her interest over a period of time,
in lieu of her continued participation in the retirement
plan.

Lynette does not challenge the value the trial court
placed on the two pensions or the characterization of the
property as community property. She argues only that the
practical result of the trial court's choice to allow Kim to
pay Lynette for her interest over time is to deny her the
ability to realize any funds from the pension for her retire-
ment. Her argument is somewhat hard to follow, but es-
sentially she asserts that she is forced to use her share of
the pension plan to meet her current needs instead of ap-
plying her interest in the pension plan toward a retire-
ment account which will benefit her in the future. She
argues, additionally, that allowing Kim to pay the amount
over a period of months reduces the amount of money
Kim has available to pay child support, attorney fees,
maintenance and costs.

■ Lynette's concerns regarding the use of the funds af-

ter they have been put into her possession are of no significance. This court cannot disturb a trial court's distribution of community property based on speculation as to how a recipient of those funds will use them. Lynette is, of course, free to use these funds as she sees fit. Nothing in the decree inhibits her from investing the funds in ways that will benefit her upon retirement. Lynette's complaint that the provision had an adverse affect on the amount of child support, maintenance, and attorney fees to be paid by Kim is also without merit. Kim and Lynette's obligation to pay child support was calculated according to the provisions of RCW 26.19.071 and was based on income each was receiving at the time the decree was entered. The amount Kim is to pay Lynette for her interest in the retirement plans was not a factor that went into the determination of their respective obligations. The same can be said of his obligation to pay maintenance.

## B
### USAA Account and Retroactive Pay

Lynette next challenges what she claims was the trial court's failure to characterize and place present values on the proceeds in Kim's USAA account and retroactive pay that Kim was to receive from United Airlines. With regard to the pensions, we will only address the characterization of the asset because the trial court's findings of fact reveal that the trial court placed a value on the account at $10,000.

■■ Lynette is correct in observing that the trial court did not characterize the USAA account. Nevertheless, that failure is not significant. Lynette fails to recognize that the characterization of the property as either separate or community does not control its disposition. The trial court's primary goal is to ensure a fair and equitable distribution. RCW 26.09.080. After reviewing the trial court's order, we are satisfied that the trial court divided the marital assets equitably. As we have noted, Lynette received use of the family home until it was sold. She also received 60 percent of the equity in the home, half of the

contents of the home and, one-half of their two pension plans. On the other hand, Kim received 40 percent equity in the home, one-half of the value of the pension plans, half of the contents of the home, the USAA account and his retroactive pay. We cannot say that this division was inequitable. This is particularly true in light of the evidence that showed that the funds that went into the USAA account were derived from an award to Kim for personal injuries he sustained in an automobile accident. The portion of a personal injury award that compensates one spouse for pain and suffering is the separate property of the injured spouse. *In re Marriage of Hilt,* 41 Wn. App. 434, 440, 704 P.2d 672 (1985).

The same can be said of the trial court's failure to characterize and value the retroactive pay that Kim was to receive from United Airlines. While the trial court should have placed a value on this asset, the error is not significant enough to warrant reversal and remand. The evidence showed that the community interest in the retroactive pay, if any, was very slight. As we have noted, the trial court is obligated only to make a fair, just and equitable division of the marital property. Even assuming the existence of this additional community asset, we cannot say that awarding Kim the retroactive pay rendered the division of property inequitable.

## III

### MAINTENANCE

■■ Lynette challenges the trial court's denial of her request for spousal maintenance. An award of maintenance is within the discretion of the trial court. RCW 26.09.090; *In re Marriage of Sheffer,* 60 Wn. App. 51, 53, 802 P.2d 817 (1990). The trial court abuses its discretion if it bases the award or denial of spousal maintenance on untenable grounds or for untenable reasons. *Coggle v.*

*Snow,* 56 Wn. App. 499, 507, 784 P.2d 554 (1990). RCW 26.09.090[1] outlines the factors the court should consider in setting maintenance.

In denying maintenance to Lynette, the trial court concluded "that [Lynette] does not meet the criteria of RCW 26.09.090 . . .". Additionally, the unequal distribution of property also obviated the need for any spousal maintenance as it substantially improved Lynette's financial position. In light of the property division, the earnings of the parties, and the fact that Lynette has sufficient training and education to enable her to provide for herself, we cannot say that the trial court's decision regarding maintenance was error.

## IV

### ATTORNEY FEES

Finally, Lynette argues that the trial court erred in not awarding her "substantial" attorney fees.[2] Lynette claims she is entitled to additional fees and costs because

---

[1]**Maintenance orders for either spouse—Factors. . . .** The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, after considering all relevant factors including but not limited to:

"(a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes for that party;

"(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his skill, interests, style of life, and other attendant circumstances;

"(c) The standard of living established during the marriage;

"(d) The duration of the marriage;

"(e) The age, physical and emotional condition, and financial obligations of the spouse seeking maintenance; and

"(f) The ability of the spouse from whom maintenance is sought to meet his needs and financial obligations while meeting those of the spouse seeking maintenance." RCW 26.09.090.

[2]Kim was ordered to pay fees of $1,000 pendente lite, and additional fees of $2,500 for trial.

of what she claims was Kim's intransigence and obstructionist tactics. Lynette's bald assertions about Kim's conduct are not sufficient to justify an award of additional fees. In her submissions to this court, Lynette has failed to describe what behavior Kim engaged in that warrants an award. A review of the entire record convinces us that while this dissolution action was highly contested, there was no conduct by either party that justifies an award of fees. Although Lynette assails Kim's attempt to obtain custody of their children, contending that this justifies an award of fees, she cites no authority for that proposition. We cannot say that the trial court erred in denying her request for attorney fees.

Affirmed.

SEINFELD, C.J., and HOUGHTON, J., concur.